**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-02695-WYD-MEH

MALIBU MEDIA, LLC,

    Plaintiff,
v.

LAWRENCE HUSEMAN,

    Defendant.

_____/

**PLAINTIFF'S MOTION FOR SANCTIONS
AGAINST DEFENDANT FOR SPOLIATION OF EVIDENCE**

**I.    INTRODUCTION**

Defendant specifically deleted material evidence from his hard drive in an attempt to avoid liability for infringing Plaintiff's copyrighted works. Only by conducting a forensic examination of Defendant's hard drive did Plaintiff discover that, not only did Defendant's computer contain Plaintiff's movies, but that Defendant deleted these movies in order to cover his tracks. Specifically, Plaintiff discovered the remnants of torrent files and X-Art movie files in the unallocated space of Defendant's hard drive. Plaintiff's expert report unequivocally establishes that (1) Defendant used BitTorrent to search for and download Plaintiff's copyrighted works and (2) Defendant deleted Plaintiffs' works from his computer. Defendant's blatant spoliation warrants severe sanctions. Accordingly, this Court should grant Plaintiff's Motion for Sanctions and enter a default judgment in Plaintiff's favor.

## II. FACTS

### A. Defendant Spoiled Evidence

Plaintiff's forensic expert, Patrick Paige of Computer Forensics, LLC, examined Defendant's hard drives and discovered that numerous files associated with Plaintiff's copyrighted works had been *deleted*. *See* Patrick Paige's Expert Report, ("Paige Decl.") attached hereto as Exhibit "A". Despite having been erased, Mr. Paige recovered fragments of torrent and media files, which make clear that Defendant used BitTorrent to download and distribute Plaintiff's copyrighted works. Thus, Mr. Paige's examination paints a clear picture illustrating Defendant's intent and nearly successful attempt to defraud both Plaintiff and this Court.

#### 1. Forensic Examination of A Hard Drive

A hard drive contains two types of spaces, allocated and unallocated. The unallocated space of a hard drive is not viewable to the typical computer user and requires specialized computer forensic software to view and analyze. *See* Paige Decl. ¶49. Unallocated space can contain deleted files or partially deleted files. *Id*. When a file is deleted, the pointers to the file are removed, but the data remains in unallocated space until such time as the operating system stores another file in the same space, thereby over-writing the data. *Id*. Thus, "[e]ven though deleted data disappears from visible view, it is not destroyed until it is overwritten by new data." *Plugged In: Guidebook to Software and the Law* § 6:2. "This overwriting … in the unallocated space occurs … [at a rate of] thousands of clusters a second[.]" *Id*. "The longer a file is deleted, the more likely all its clusters have been reassigned to other active files, making the recovery of the deleted file impossible." *Id*. Therefore, the timely acquisition and imaging of a hard drive directly impacts the preservation and potential discovery of evidence that a defendant may seek to destroy. If a defendant deletes evidence, Plaintiff's best chance at discovering and possibly

recovering the deleted evidence is through the immediate acquisition of a defendant's hard drive and subsequent examination of its unallocated space.

### 2. Forensic Examination Result of Defendant's Hard Drive

To determine if spoliation occurred, Mr. Paige examined the unallocated space within Defendant's hard drive. Within the unallocated space of Defendant's hard drive, Mr. Paige located internet history demonstrating that Defendant searched for X-Art content as early as July 2013 – four months *prior to* commencement of this suit.[1] *See* Paige Decl.. ¶44. However, when specifically asked if he had searched for X-Art or Malibu Media files, Defendant responded, "Yes, I searched for the above terms directly when researching upon being served this case." *See* Defendant's Response to Plaintiff's First Set of Interrogatories ("Def. Interrogatory Resp."), attached here to as Exhibit "B," at No. 20. Notably, Defendant failed to mention the Internet history that occurred well before this lawsuit started. *See id.*

Further, Defendant did not just merely *search* for X-Art, he *downloaded* it through BitTorrent as well. *See* Paige Decl. ¶46(a)-(c). Indeed, Mr. Paige specifically located nineteen (19) BitTorrent file fragments related to X-Art within unallocated space. *See id.* Using forensic software, Mr. Paige searched the hard drive for "Bencode Files," which are encoding files commonly used by torrent files. *See id.* at ¶47. Specifically, Mr. Paige used the EnScript, "BitTorrent Bencode File Finder (V2)" to locate these files on the hard drive. Notably, upon searching the unallocated space of the hard drive, Mr. Paige discovered numerous Bencode Files, with thirty-six (36) relating to Malibu Media or X-Art torrents. *See id.* at 46(c). Importantly, all the files relating to Malibu Media or X-Art were found *only* in the computer's unallocated space. *See* Paige Decl. ¶48. This means that any and all evidence regarding Defendant's internet

---

[1] Plaintiff also discovered that Defendant internet history contained X-Art content on various occasions between March 2014 and June 2014 – *after* commencement of this suit.

3

history, downloads, and distributions of X-Art content via BitTorrent had been deleted. Only through Mr. Paige's expertise was Plaintiff able to discover evidence of Defendant's attempt to defraud Plaintiff and this Court.

### B. Plaintiff's Additional Evidence Irrefutably Links Defendant to the Spoliation and BitTorrent Use

Defendant is undeniably a serial copyright infringer. Using software entitled "Internet Evidence Finder 6.4.2.0070 by Magnet Forensics," Mr. Paige searched Defendant's hard drive for evidence of BitTorrent use. *See* Paige Decl. ¶41. Defendant's computer was riddled with such evidence. Indeed, Mr. Paige discovered a total of one hundred and eight-four (184) BitTorrent URLs, eight hundred and seventy (870) BitTorrent file fragments, and evidence of uTorrent, a BitTorrent client. *See* Paige Decl. ¶¶42, 43, and 46(b).

Plaintiff's expert report also contains a list of file names discovered on the spoiled hard drive. *See* Exhibit G attached to Paige Decl. Many of these files correlate directly with the files listed on Plaintiff's Additional Evidence report of third party infringements. *See* Exhibit H attached to Paige Decl. To be clear, the same exact files that were stored on the spoiled drive were also detected by Plaintiff's investigator as being downloaded by the same IP address that infringed Plaintiff's work. For example, Plaintiff's Additional Evidence includes third-party works with titles, "Redheads Are Sexy," "The Pharcyde," "Telepopmusik," "Madeleine Peyroux," and "Nubile Films" among others. *Id*. All of the foregoing titles were found on Defendant's hard drive. *See* Exhibit G attached to Paige Decl. Such evidence proves that Defendant's computer was the computer monitored by Plaintiff's investigator and was the computer used to infringe Plaintiff's works. Defendant's denials ring hollow.

### III. LEGAL STANDARD

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Philips Electronics North America Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1194-95 (D. Utah 2011) (internal citations omitted). "[L]itigants have a duty to preserve documents or materials—including electronic documents and materials—that may be relevant to ongoing and potential future litigation." *Helget v. City of Hays*, 2014 WL 1308893, *3 (D.Kan. 2014) (quoting, *Philips Electronics North America Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1195 (D. Utah 2011)). "Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Perkins v. Federal Fruit & Produce Company, Inc.*, 2014 WL 4392010 at *5 (D.Colo. 2014) (citing *Turner v. Public Service Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir.2009)). "[I]f the aggrieved party seeks a remedy for spoliation, it must also prove bad faith." *Id*.

### IV. ARGUMENT

**A. Defendant Had A Duty To Preserve Evidence On His Hard Drive**

As the sole individual in possession of his hard drives, Defendant had a duty to preserve evidence on his hard drive. "It is well established that the duty to preserve evidence arises when a party reasonably anticipates litigation." *McCargo v. Texas Roadhouse, Inc.*, 2011 WL 1638992 at *3 (D. Colo. 2011) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010)). "The duty to preserve means action must be taken to preserve evidence, meaning that it is not lost, destroyed, inadvertently or negligently overwritten, or intentionally wiped out, and that it is available to be

5

produced to the other side." *Id.* In online copyright infringement cases such as this, there is a strong public interest in recognizing a defendant's enforceable duty to ensure that material computer evidence is not deleted or altered. *See e.g. Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013) ("Bryan White's wiping clean of his computer in attempting to cover up the fact that he had downloaded the BitTorrent software, as well as five of Malibu's movies, required a substantial penalty, and also to make a statement that would *effectively deter others* from acting as Bryan White had acted in this case.")

In this case, Defendant Lawrence Huseman has been aware of this lawsuit since October 2013. Prior to filing, Plaintiff learned that between March 21, 2013 and October 6, 2013, Defendant was using the BitTorrent protocol to illegally download and distribute Plaintiff's copyrighted works. Plaintiff is in possession of PCAPs which evidence that Defendant's IP address downloaded and distributed Plaintiff's copyrighted works within that time frame via the BitTorrent protocol. Additionally, Plaintiff's investigator, IPP International UG ("IPP"), produced a list of third party works, which IPP detected Defendant distributing through BitTorrent between December 12, 2012 and December 7, 2013 – *after* notification of this suit.

Plaintiff's Complaint against Defendant for direct copyright infringement was filed on October 3, 2013. On or around October 21, 2013, Defendant received a letter from Comcast Cable, advising him that Plaintiff had filed a federal lawsuit against Defendant. Therefore, Defendant has known about this case for over a year and received notice on or around October 21, 2013. Receipt of this letter triggered Defendant's duty to preserve all evidence. And, Defendant should have reasonably known that altering his hard drives by deleting any X-Art or BitTorrent activity was improper in light of the allegations within this lawsuit. Nevertheless, fragments of Plaintiff's works were discovered in the hard drive's unallocated space, and third-

party content downloaded *after* notification of this suit was never recovered. Accordingly, Defendant had a duty to preserve all contents of the hard drive and deliberately failed to do so.

### B. Defendant's Destruction Of Direct Evidence Of Copyright Infringement On His Hard Drive Was Done In Bad Faith

Defendant acted in bad faith when he destroyed Plaintiff's copyrighted works and torrent files related to Plaintiff's copyrighted works on his hard drive. "Bad faith is the antithesis of good faith and has been defined … to be when a thing is done dishonestly and not merely negligently. It is also defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 635 (D. Colo. 2007). Plaintiff's expert witness, Patrick Paige, discovered an abundance of evidence demonstrating Defendant's extensive and habitual piracy of Plaintiff's copyrighted works. Beyond the discovery of direct evidence of infringement, Mr. Paige's examination revealed that Defendant engaged in targeted deletion of any files linking Defendant's hard drive to Plaintiff's copyrighted works and the intentional destruction of such evidence aimed at defrauding both Plaintiff and this Court.

#### 1. Forensic Examination of Defendant's Hard Drive Revealed Spoliation

On September 2, 2014, Mr. Paige received an image of Defendant's hard drive from Defendant's expert witness, David Penrod of Forensic Data Discovery in Colorado. Mr. Paige's examination of Defendant's hard drive revealed: (a) the existence of two (2) media video fragment files of Plaintiff's copyrighted works; (b) nineteen (19) BitTorrent file fragments related to Plaintiff's copyrighted works; and (c) thirty-six (36) bencode files[2] relating to Plaintiff's copyrighted works. Significantly, all of the foregoing files were discovered in the hard drive's *unallocated* space. Discovery of these files in the *unallocated* space unquestionably

---

[2] Bencode files are encoding files commonly used by torrent files.

7

confirms Defendant's bad faith deletion. Indeed, Defendant deleted any and all digital evidence linking his hard drive to any Malibu Media or X-Art content, all the while, leaving other third-party BitTorrent files perfectly intact in the hard drive's *allocated* space. Such a massive *targeted* deletion could only have been completed in bad faith.

Further, Defendant's deletion would have appeared to be permanent to the average user, such as Defendant. Indeed, in deleting Plaintiff's copyrighted works, Defendant truly believed that the deletion was permanent and the targeted files could not be recovered. Unfortunately, Defendant was partially correct; only remnants of the files remain and thus the discovered files are unrecoverable.

### C. Plaintiff Is Prejudiced By Defendant's Destruction Of Evidence

Defendant's purposeful spoliation of evidence has severely prejudiced Plaintiff. Although Plaintiff discovered substantial evidence of direct infringement, it was only able to recover fragments of select files. Specifically, Mr. Paige's examination revealed evidence of the prior existence of three (3) of Plaintiff's copyrighted works listed on Exhibit B to Plaintiff's Amended Complaint – "Erotic Stretching and Sex," "Sneaking In," and "Czech Beauties." Because these files had been deleted, Mr. Paige was only able to recover fragments of the files which were limited to small video portions or titles of the infringing files.

Plaintiff believes that the remaining works listed on its Complaint were deleted and have since been overwritten and are thus unrecoverable. Indeed, "[d]ata in unallocated space is analogous to random, unbundled, and unorganized piles of confetti or shredded paper[.]" *Plugged In: Guidebook to Software and the Law* § 6:2. In this case, all fragments of files evidencing Defendant's searched, downloading, and distribution Plaintiff's copyrighted works were located in the unallocated space of the hard drive. Therefore, Plaintiff will not ever be able

to locate or recover the infringing copies of those works. Accordingly, Plaintiff has been prejudiced by Defendant spoliation of evidence in an attempt to conceal all of his infringements of Plaintiff's works.

### D. Default Judgment Should be Entered Against Defendant for His Spoliation

By deleting BitTorrent files and Plaintiff's works from his hard drive, Defendant intentionally altered and destroyed relevant material evidence in an attempt to purposefully mislead and defraud Plaintiff and the Court. Accordingly, this Court should enter a default judgment against the Defendant. In the Bellwether trial, the Honorable Judge Baylson held that spoliation and perjury deserve "a heavy dose of damages" to deter others. He also noted that "[i]n a criminal case, this conduct would be denominated as obstruction of justice."

> [I]n this case, because of Bryan White's having perjured himself at the Rule 104 hearing and having taken steps to destroy and conceal evidence, a further *substantial award of damages was necessary*. In a criminal case, this conduct would be denominated as obstruction of justice. Bryan White's wiping clean of his computer in attempting to cover up the fact that he had downloaded the BitTorrent software, as well as five of Malibu's movies, required a substantial penalty, and also to make a statement that would *effectively deter others* from acting as Bryan White had acted in this case.

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013).

In this case, because of the intentional spoliation no sanction short of default judgment is appropriate. Default judgment is routinely awarded in such situations. *See e.g. Atl. Recording Corp. v. Howell*, 2008 WL 4080008 (D. Ariz. 2008) (court entered default judgment against defendant who deleted peer-to-peer program, deleted infringing files from his hard drive, and then gave false copies of his hard drive to plaintiff's expert); *Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4877701 (C.D. Cal. 2007) (entering default judgment against defendants when defendants operated a BitTorrent website and destroyed evidence of online postings and then lied to the court about it); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex.

2006) (granting default judgment when defendant wiped her hard drive, stating "defendant's conduct shows such blatant contempt for this Court and a fundamental disregard for the judicial process that her behavior can only be adequately sanctioned with a default judgment.")

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant the instant Motion, enter a default judgment against Defendant and award Plaintiff its reasonable fees and expenses.

Dated: November 7, 2014

                Respectfully submitted,

                By: */s/ Jason Kotzker*
                Jason Kotzker, Esq.
                jason@klgip.com
                KOTZKER LAW GROUP
                9609 S. University Blvd., #632134
                Highlands Ranch, CO 80163
                Phone: (720) 330-8329
                *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                By: /s/ *Jason Kotzker*